MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, SBN 83684
JEAN BARNIER, SBN 231683
645 First St. West
Sonoma, CA 95476
(707) 935-3205
(707) 935-7051 (Facsimile)
Email:  macclaw@macbarlaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | **Case No. 21-10077 RLE** |
| WINDSOR MILL COMMUNITY, LLC | Chapter 11 |
| A California limited liability company | **DEBTOR'S DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION [JUNE 11, 2021]** |
| Debtor. | |

## PRELIMINARY STATEMENT

Windsor Mill Community, LLC (the "Debtor") proposes this plan of reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

The Plan has been combined with the Debtor's Disclosure Statement to provide the information concerning the Debtor and the Plan required by Bankruptcy Code Section 1125. This information includes a summary of the Debtor's assets and liabilities, a summary of what the holders of Allowed Claims will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures necessary for Confirmation (approval) of the Plan. The Bankruptcy Court authorized the Debtor's circulation of a Disclosure Statement and Plan on the record at the status conference on this Chapter 11 Case on April 19, 2021.  However, the Disclosure Statement is still subject to final approval by the Court, the Court's approval of the Disclosure Statement does not constitute and endorsement of the Plan, and the Court has made no independent investigation or determination of any factual statement or dollar value set forth in the Plan and Disclosure Statement.

**THE DEBTOR URGES YOU TO READ THIS PLAN AND DISCLOSURE STATEMENT CAREFULLY.  THE PROJECTED FINANCIAL INFORMATION IN THIS DISCLOSURE STATEMENT REFLECTS ASSUMPTIONS BY THE DEBTOR THAT MAY OR MAY NOT PROVE TO BE CORRECT.  IN ADDITIONS, ESTIMATES OF ALLOWED CLAIMS MAY VARY FROM THE FINAL AMOUNTS OF ALLOWED CLAIMS.  ALL OBJECTIONS TO CLAIMS ARE RESERVED.**

This Plan sets forth the Debtor's proposal for the satisfaction of certain Allowed Claims against the Debtor, and the Distribution thereafter of all remaining assets to the Debtor's Equity Security Holders.  The Debtor hereby request that the Bankruptcy Court confirm the Plan and do so, if applicable, in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

## SUMMARY OF THE PLAN

This is a "single asset real estate case" involving a 19 +/- acre development parcel of land in Windsor, California.  The property is subject to first and second deeds of trust in the combined

1

amount of over $37,000,000. Those loans were due and payable as of the date of the bankruptcy and the property was at imminent risk of being lost in foreclosure. There is approximately $68,000 in non-insider unsecured debt, all of which is held by professionals and consultants retained by the Debtor to obtain land use entitlements.

Under the Plan, the secured debt will be restructured into two newly amortized "interest only" loans due in full in two years. The non-insider unsecured creditors will be paid in full in two installments. This will be accomplished by additional funding from the holder of the second deed of trust on the property, affiliates of MacKenzie Capital Management, LP ("MacKenzie"). The funding will be a combination of additional loan advances and a $100,000 capital contribution. In exchange for the capital contribution, the Debtor will issue a new class of membership interests to MacKenzie. The existing equity interests in the Debtor will be cancelled.

This is a summary only. Full details of the Plan are set forth below.

# ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below:

"Administrative Claim" means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under Section 365 of the Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

"Administrative Claims Bar Date" means that date which is thirty (30) days following the date of the notice of the Confirmation Date.

"Allowed" or "Allowed Amount" means the amount in which any Claim or Interest is allowed. Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the Petition Date.

"Allowed Administrative Claim" means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

"Allowed Claim" means a Claim (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order, or (2) the Claim has already been satisfied.

"Allowed Interest" means the Allowed Interest of an Equity Security Holder.

"Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Secured Claim, including the unsecured Claims of undersecured Creditors and Rejection Claims, but excluding Administrative Claims, Priority Claims and Tax Claims.

"Available Cash" means any and all cash and cash equivalents owned or held by the Reorganized Debtor available for payment of Claims and Interests after payment of Allowed Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and after reserving for expenses incurred and anticipated to be incurred as provided for under the Plan.

"Avoidance Actions" means causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

"Bankruptcy Case(s)" or "Case(s)" means the bankruptcy case commenced by the Debtor filing with the Bankruptcy Court of its Voluntary Petitions under Chapter 11 of the Bankruptcy Code, Case No. 21-10077 RLE.

"Bankruptcy Code" means Title 11, United States Code, § 101, et seq. as in effect and

applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division or such other court exercising jurisdiction over the Case.

"Bankruptcy Estate(s)" means the estate(s) created by the commencement of the Bankruptcy Case(s) and comprised of the property described in Section 541 of the Bankruptcy Code.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

"Claim" means any (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means (a) with respect to claims other than those held by governmental units, June 17, 2021 (b) with respect to claims held by governmental units, August 16, 2021, and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

"Claims Objection Date" means the date ninety (90) days after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the *ex parte* motion of the Reorganized Debtor.

"Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Order of Confirmation.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

"Creditor" means any entity holding a Claim against the Debtor.

"Debtor" means Windsor Mill Community, LLC, a California limited liability company.

"Debtor's Professionals" means MacConaghy & Barnier, PLC, and/or their respective successors, if any; and such other professionals whose employment by the Debtor prior to

Confirmation is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Reorganized Debtor to represent or assist them in fulfilling their duties and obligations as the Reorganized Debtor under the Plan, including such accountant(s) as the Reorganized Debtor may select to complete the Debtor's tax returns and other required filings with governmental authorities having jurisdiction over the Reorganized Debtor and such legal professionals as might be appropriate to assist in administering the Plan, the Bankruptcy Cases and the Bankruptcy Estates.

"Disbursing Agent" shall be the Debtor, provided that the Debtor may request the Court to designate another Person to serve as Disbursing Agent.

"Disputed Claim" means a Claim against the Debtor (a) as to which a proof of Claim has not been filed and that has been listed in the Debtor's Schedules as disputed, contingent or unliquidated, or; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the Bankruptcy Court and which objection or adversary proceeding has not been withdrawn or disposed of by a Final Order.

"Distribution" means, as the context requires: (a) the cash to be provided under the Plan to the holders of Allowed Claims and Allowed Interests; or (b) the payment, transfer, delivery or deposit of cash to Creditors and Equity Security Holders pursuant to the Plan.

"Distribution Date" means any date on which a Distribution is made pursuant to the Plan.

"Effective Date" means the thirtieth (30th) day following the Confirmation Date so long as the Order of Confirmation is not subject to a stay.

"Equity Security Holder" means the holder of an Interest in the Debtor.

"Final Order" means an order entered on the docket by the Bankruptcy Court as to which no timely filed notice of appeal is pending within ten (10) days entry of such order; or, if such appeal is pending, for which no stay pending has been issued.

"Insider" means any person falling within the definition of "insider" or "affiliate" as set forth in 11 U.S.C. § §101(2) & (31)(B), (E), and (F).

"Interest" means units or rights to units or any membership interest or other ownership interest held by any Person in the Debtor.

"Legal Rate" means .06% per annum, the interest rate allowed on judgments entered in federal courts pursuant to 28 U.S.C. § 1961(a) which is the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the Petition Date.

"Local Rules" means the Local Rules of the United States Bankruptcy Court for the Northern District of California, as amended, as applicable to this Bankruptcy Case.

"Order of Confirmation" means the order entered by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Person" shall have the meaning ascribed to it in the Bankruptcy Code.

"Petition Date" means February 16, 2021, the date on which the Debtor filed its Voluntary Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the Bankruptcy Case.

"Plan" means this Debtor's PLAN OF REORGANIZATION, including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

"Priority Claim" means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

"Pro Rata" means, with respect to any Distributions to be made to the holder of an Allowed Claim or Interest, the proportion that such Allowed Claim or Allowed Interest bears to the aggregate of all outstanding Allowed Claims or Allowed Interest in the same Class.

"Rejection Claim" means an Allowed Unsecured Claim arising from the Debtor's rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

"Rejection Claims Bar Date" means the earlier of (a) thirty (30) days following the date of the notice of the Confirmation Date, or (b) thirty (30) days after the rejection date with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

"Reorganized Debtor" means the Debtor on and after the Effective Date.

6

"<u>Retained Claims</u>" means any Claim, or cause of action created by contract, tort, equity, or statute, owned or held by the Debtor against any Person as of the Effective Date, including Avoidance Actions and those Retained Claims referred to in Article X.

"<u>Schedules</u>" means the Debtor' respective schedules of assets and liabilities consisting of Schedule "A" through "J" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at anytime prior to Distribution.

"<u>Secured Claim</u>" means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"<u>Tax Claim</u>" means any Allowed Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"<u>Windsor Real Property</u>" means that certain real property commonly known as 8703-8777 Bell Road and 8820 Larson Way, Windsor, CA.

A term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

**ARTICLE II**

**BACKGROUND OF THE DEBTOR AND POST PETITION EVENTS**

The Debtor is a California limited liability company organized by two experienced land developers, Robert H. Bisno and Dan S. Palmer, Jr, through their affiliated entities JAJ1, LLC and BP1, LLC, respectively, for the sole purpose of developing a 19 +/- acre mixed use project in the Town of Windsor, California, located at 8703-8777 Bell Road and 8820 Larson Way (the "Windsor Real Property"). On September 26, 2014, the Debtor purchased the Windsor Real Property as raw

land from Windsor Mill Homes, LLC. The Seller financed the purchase with a $10,150,000 loan secured by a first deed of trust on the property.

The Debtor needed additional capital to fund the expensive entitlement process and to pay debt service on the property. Thus, concurrently with the closing, the Debtor obtained a second loan from affiliates of Mackenzie Capital Management ("MacKenzie") in the amount of $2,772,000 secured by a second deed of trust on the Windsor Mill Property. MacKenzie was also issued a small LLC membership interest and certain limited voting rights in exchange for its contribution.

Obtaining the required development entitlements took far longer than expected. There were denials and administrative appeals at various points in the process, and the area was heavily impacted by wildfires. On June 26, 2019, the Debtor was finally able to obtain approval of its use permit, Tentative Map, and Site Plan and Design Review for 360 low rise housing units in 16 buildings on the site. Once these entitlements were obtained, an MAI appraisal of the Windsor Mill Property was commissioned. The appraiser – Curtis Rosenthal, Inc., -- valued the property in the amount of $45 Million.

Unfortunately, during this long development process, the Debtor was required to pay secured debt service, real property taxes, and other costs. The Debtor was required to seek multiple extensions of the Windsor Mill Homes, LLC loan, and obtained millions of dollars in advances from MacKenzie to pay that debt service and other obligations. Significant debt accrued which was generally funded by MacKenzie, dramatically increasing the debt owed to it. On October 1, 2019, Windsor Mill Homes, LLC gave the Debtor a fifth and final extension of the loan to December 19, 2019. The Debtor was unable to pay off the debt by that deadline, so judicial foreclosure of this obligation was commenced. On February 16, 2021, the Debtor filed this Chapter 11 case to avoid foreclosure and loss of the property to the senior secured lender Windsor Mill Homes, LLC.

Since the Chapter 11 Case was filed, the Debtor has reached a new agreement with Windsor Mill Homes, LLC for an additional two-year extension of the first deed of trust. Debtor expects that MacKenzie may advance up to $2,000,000 to fund that debt service before and after Confirmation and complete the entitlement process. This should enhance the marketability of the Windsor Mill Property. These developments enable the Debtor to promulgate this Chapter 11 Plan.

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Allowed Claims against and Interests in the Debtor are designated and classified below for purposes of the Plan. Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one class is classified in a particular class only to the extent that it qualifies within the description of that Class, and is placed in a different class to the extent it qualifies within the description of such different class.

**3.1** **Class 1 (Secured Claim of Windsor Mill Homes, LLC).** Class 1 consists of the Allowed Claim of Windsor Mill Homes, LLC, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on the Windsor Real Property and associated personalty. It has been stipulated that the Class 1 Claim was owed $12,544,576.25 as of April 30, 2021. This Class is impaired and entitled to vote on the Plan.

**3.2** **Class 2 (Secured Claim of MacKenzie Capital Management, LP and its affiliates "Mackenzie").** Class 2 consists of the Allowed Claim of Mackenzie, or its assignee to the extent that such Claim constitutes an Allowed Secured Claim on the Windsor Real Property and associated personalty. The Class 2 Claim was owed $23,584,239.47 as of the Petition Date. This Class is impaired and entitled to vote on the Plan

**3.3** **Class 3 (Secured Claim of The County of Sonoma).** Class 3 consists of the Allowed Claim of The County of Sonoma, or its assignee, for unpaid real property taxes and assessments to the extent that such Claim constitutes an Allowed Secured Claim on the Windsor Real Property. The Debtor estimates that the Class 3 Claim was owed $247,711.41 as of the Petition Date. This Class is impaired and entitled to vote on the Plan

**3.4** **Class 4 (Claims held by Insiders).** Class 4 consists of any and Claims against the Debtor held by Insiders. The Debtor believes that the sole Class 4 Creditor is BP1, LLC, who claims to be owed $224,959.31 as of the Petition Date. This Class is impaired and entitled to vote on the Plan.

**3.5** **Class 5 ( Non-insider General Unsecured Claims ).** Class 5 consists of all Allowed Unsecured Claims against the Debtor not included or provided for in any other class, including all Rejection Claims and all unsecured Claims of vendors and trade creditors for goods delivered or services provided to the Debtor prior to the Petition Date, but excluding Administrative Claims, Tax Claims, and Insider Claims. The Debtor estimates that there are six Class 5 Creditors who were owed an aggregate of $66,727.84 as of the Petition Date. This Class is impaired and entitled to vote on the Plan.

**3.6** **Class 6 (LLC Interests in the Debtor).** Class 8 consists of all Allowed Interests in the Debtor. This Class is impaired and is conclusively deemed to have rejected the Plan by operation of Bankruptcy Code Section 1126(g).

## ARTICLE IV

### TREATMENT OF CLASSES OF CLAIMS NOT IMPAIRED UNDER THE PLAN

There are no unimpaired Classes under the Plan.

## ARTICLE V

### TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims shall be treated as follows:

**5.1** **Allowed Administrative Claims.** Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of (a) the Effective Date, (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim, and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor' business by a person other than an insider, within such time as payment is due pursuant to the terms giving rise to such Claim. Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other than by the Debtor' Professionals, must be filed on or before the Administrative Claims Bar Date or the holder of such Claim shall be forever barred from asserting such Claim or receiving any payment on account of such Claim. The Debtor believes that there will be no unpaid Administrative Claims

as of the Effective Date.  A provision has been made for these liabilities for precautionary purposes only.

  **5.2** **Tax Claims.**  The holders of Allowed Claims entitled to priority under 11 U.S.C. § 507(a)(8) ("Allowed Tax Claims") will receive equal deferred cash payments, payable quarterly, commencing with an initial payment six months from the Effective Date, over a period not exceeding five (5) years after the date of assessment of each such claim, or the applicable Petition Date, whichever is sooner; provided however, that Allowed Tax Claims shall be paid in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.  The unpaid portion of any Allowed Tax Claim shall bear interest at the statutory rate.  The Reorganized Debtor reserves the right to pay any Allowed Tax Claim in full at any time after the Effective Date. The Debtor believes that there will be no unpaid Tax Claims as of the Effective Date.  A provision has been made for these liabilities for precautionary purposes only.

**ARTICLE VI**

**TREATMENT OF CLASSES OF CLAIMS AND INTERESTS
THAT ARE IMPAIRED UNDER THE PLAN**

  **6.1** **Class 1 (Secured Claim of Windsor Mill Homes, LLC)**. Pursuant to the provisions of Bankruptcy Code Section 1123(a)(5) and 1123(b)(3)(A), the Class 1 Claim shall be deemed an Allowed Claim, and the rights of the Estate and other appropriate parties in interest shall be compromised and settled as provided in that certain "Stipulation Re Treatment of Claim of Windsor Mill Homes, LLC, and for Adequate Protection" filed with the Bankruptcy Court on April 27, 2021, as Dkt. No. 37-1. (A complete copy of this document may be viewed on the Court's PACER website, or obtained from the Debtor's counsel).

  **6.2** **Class 2 (Secured Claim of Mackenzie)**. Pursuant to the provisions of Bankruptcy Code Section 1123(a)(5) and 1123(b)(3)(A), the Class 2 Claim shall be deemed an Allowed Claim, and the rights of the Estate and other appropriate parties in interest shall be compromised and settled as provided in this Section.

**Allowed Amount of Class 2 Claim.** The Class 2 Claim shall be deemed an Allowed Claim in the amount of $23,584,239.47, as of the Petition Date less any payments made by or on behalf of the Debtor and applied to the loan balance since that time, and plus advances, attorneys fees and other collection costs incurred by Mackenzie through the Effective Date ("the Effective Date Balance").

**Lien Retention and Satisfaction of Claim.** The holder of the Allowed Class 2 Secured Claim shall retain its lien under non-bankruptcy law. On the Effective Date, the Class 2 Claimant shall receive shall receive a Modified Promissory Note in a form approved by the Class 2 Claimant in the amount of the Effective Date Balance. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the rate of five percent (5%) per annum. The Modified Note shall accrue interest without any required periodic payments and negatively amortize. All outstanding principal and interest payable on this Modified Promissory Note, and any other sums due thereunder, shall be due in full two (2) years from the Effective Date, unless paid in full prior to that time.

**Waiver of Right to Object to Claim and Release of Counter-claims** As of Effective Date, the Debtor, the Reorganized Debtor, their predecessors, heirs, successors, and assigns, including any Chapter 7 Trustee, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Class 2 Creditor, its predecessors, successors, assigns, and its present and former directors, shareholders, officers, agents, attorneys, advisors, accountants, financial advisors, investment bankers, and employees, and any entity claimed to be liable derivatively through any of the foregoing, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtor or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such entity would have been legally

entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtor, the Reorganized Debtor, the Debtor's Bankruptcy Case, the negotiation, execution, or collateralization of any loan document connected in any way with the Class 2 Claim, or the subject matter of, or the transactions or events giving rise to, the Class 2 Claim. This waiver and release includes, without limitation, (1) any right to object to the Class 2 Claim, (2) any right to surcharge the Class 2 Claim, (3) any right to incur secured debt with a "priming lien" as to the Class 2 Claim, (4) any claims or causes of action which may exist pursuant to Bankruptcy Code Sections 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 552, (5) any claims or setoff rights for usury, and (6) any claims or set offs arising out of any non-bankruptcy right under contract, tort, or statute in law or equity. The release granted by this Section shall be deemed to include an express and irrevocable waiver of any rights conferred by California Civil Code Section 1542, which states: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

**Default Rights**. In the event that there is a default in any payment due under the Modified Promissory Note in favor of the Class 2 Claimant, which default is not cured within ten (10) days after written notice of the default is sent by the Class 2 Claimant to the Debtor and its counsel (which notice may be given by electronic mail, facsimile, overnight delivery or first class U.S. Mail), the Class 2 Claimant shall be permitted, without the need for a further order of the Bankruptcy Court, to exercise any and all rights that it has, with respect to its collateral, pursuant to (a) its deed of trust recorded against the Windsor Real Property, (b) the Modified Promissory Note and/or (c) applicable nonbankruptcy law. Any such notice of default shall be deemed sent when transmitted by electronic mail or by facsimile or

Case: 21-10077   Doc# 47   Filed: 06/21/21   Entered: 06/21/21 10:21:38   Page 14 of 30

when delivered to an overnight courier or placed in the U.S. mail, first class and postage prepaid.

**Subordination to New Senior Debt**.   At any time prior to the extended Class 2 Maturity Date, the Class 2 Claimant agrees to subordinate its existing lien to a new first deed of trust on the subject property on the written request of the Reorganized Debtor on the following conditions: (1) the Reorganized Debtor shall not be in default on its obligations to the Class 2 Claimant or any senior lienholder (including real property taxes); (2) any such new first deed of trust shall completely satisfy the Class 1 Claimant;  (3) no loan proceeds in excess of the amount necessary to satisfy the Class 1 Claimant shall be payable to any party other than the Class 2 Claimant, and, (4) the Class 2 Claimant shall have the right to review and approve the terms and documentation of any such new first deed of trust, which approval shall not be unreasonably withheld.

**Rights Against Guarantors**.  Nothing herein shall be deemed to exonerate any claim on a guaranty held by the Class 2 Creditor.

**6.3**    **Class 3 (Secured Claim of County of Sonoma).**  The holder of the Allowed Class 3 Secured Claim shall retain its lien under non-bankruptcy law until all taxes have been paid in full and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before the Effective Date, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate as set forth in Bankruptcy Code Section 511.  The Reorganized Debtor reserves the right to pay the Class 3 Claim in full at any time after the Effective Date.  A failure by the Reorganized Debtor to make a payment to the Class e Claimant shall be an Event of Default.  If the Reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the Class 3 Claimant, then the Class 3 Claimant may enforce the entire amount of its Claim, plus all penalties and interest accrued under state law, against the Reorganized Debtor in accordance with applicable state law remedies.

**6.4** **Class 4 (Insider Claims).** The Allowed Class 4 Claims held by any Insider shall be subordinated to the full satisfaction of (1) all other classified and unclassified claims, (2) any post-petition advances funded directly or indirectly by the Class 2 Claimant, and (3) the capital contribution funded by the Class 2 Claimant set forth in Section 7.3 below plus a preferred return of 12% per annum. In the event that any sale or refinancing of the Windsor Real Property does not generate sufficient funds to satisfy these liabilities in full, there shall be no distribution to the Class 4 Insider Claims.

**6.5** **Class 5 (General Unsecured Claims).** Class 5 Allowed general unsecured claims shall be paid in full in two equal installments with interest at the Legal Rate. The first such payment shall be made on the Effective Date. The second and final payment shall be made one year from the Effective Date.

**6.6** **Class 6 (LLC Interests in the Debtor).** The Class 6 interests of the holders of membership interests in the Debtor shall be cancelled as of the Effective Date. No dividend or other payment or transfer shall be made to the Class 6 interests on account of their membership interests.

**ARTICLE VII**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**7.1** **Post Confirmation Operations and Management of Reorganized Debtor.** On and after the Effective Date, the Reorganized Debtor shall be free to operate its business without further supervision or control by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code except as provided in the Plan or by an order of the Bankruptcy Court. Specifically, and without limitation, the Reorganized Debtor may sell, lease, or refinance its properties without further Order of Court.

**7.2** **Retained Power to Sell Free and Clear of Liens.** The Reorganized Debtor reserves its pre-confirmation rights and powers to sell its property free and clear of liens and interests by noticed motion pursuant to Bankruptcy Code § 363(f), as to any lien or interest whether scheduled or

unscheduled, and whether perfected or unperfected. Creditors reserve any and all grounds to object to such relief. The Court expressly reserves jurisdiction over those matters.

### 7.3    Capital Contribution and Additional Loan Advances by MacKenzie or its Affiliate.

7.3.1    **Amount and Timing**. On the Effective Date, MacKenzie or its designated Affiliate shall make a new capital contribution to the Debtor in the amount of $100,000. The capital contribution shall be used exclusively for (1) the payment to the Unclassified Claims and the Class 1, 3 & 5 Creditors identified above, (2) development costs of the Windsor Real Property, and (3) payment of other normal post-Confirmation operating expenses.

In addition to the capital contribution, MacKenzie shall have the right to advance additional funds to the Reorganized Debtor of up to $1,900,000.00 to be used exclusively for (1) the payment to the Unclassified Claims and the Class 1, 3 & 5 Creditors identified above, (2) development costs of the Windsor Real Property, and (3) payment of other normal post-Confirmation operating expenses. The minimum amount of any such advance shall be the sum of $100,000, including any pre-Confirmation tax payments and adequate protection payments made by MacKenzie to the Class 1 Creditor. After Confirmation, any such advances may be made on an as-needed basis. Any such advances shall be added to the Class 2 Claim and be deemed secured by the Class 2 Claimant's deed of trust.

For the avoidance of doubt, the only mandatory funding required by this Section is the total sum of $200,000 – a $100,000 capital contribution and a $100,000 additional loan advance.

7.3.2    **Issuance of New LLC Membership Interests**. In consideration for this new capital contribution, the Debtor shall issue to MacKenzie or its designated affiliate 100 units of a new class of membership interests, which shall be the only issued and outstanding membership interests in the Reorganized Debtor. At any time after the Effective Date, the entity making this new capital contribution shall have the right to amend the Debtor's Articles of Organization and/or Operating Agreement to (a) change the State of organization of the Reorganized Debtor, (b) designate new and/or different Managers, (c) designate the Reorganized Debtor as a "member-managed" or "manager-managed" LLC, (d) employ such manager(s), officer(s) or agent(s) as it

deems fit, or (d) take any other action deemed necessary to operate the business of the Reorganized Debtor. Upon the Effective, any and all sums in the Debtor in possession account shall be immediately turned over to the new Manager(s).

7.3.3 **Securities Law Matters**. In reliance upon Bankruptcy Code Section 1145(a), the offer, issuance, or distribution of the new membership interests in the Reorganized Debtor authorized by this Section 7.3 and the cancellation of the existing membership interests in the Debtor authorized by Section 6.6 is exempt from the provisions of Section 5 of the Securities Act and any state or local law requiring registration for the offer, issuance, distribution, or cancellation of a security.

**7.4 Distributions.**

7.4.1 **Distribution Account**. The Disbursing Agent shall hold any funds transmitted to it in a segregated trust account for the benefit of holders of Allowed Claims.

7.4.2 **Timing of Distributions**. The Disbursing Agent shall make Distributions to holders of Allowed Claims as required by the Plan. Except as specifically set forth in the Plan or the Confirmation Order, Distributions may be made without further Order of Court.

7.4.3 **Reserve for Disputed Claims**. The Disbursing Agent shall retain a reserve in the Distribution Account in an amount sufficient to make a Pro Rata Distribution to Disputed Claims, and shall promptly make such Distribution when any Disputed Claim becomes an Allowed Claim.

7.4.4 **Distribution Addresses**. Unless a Creditor has provided the Reorganized Debtor with written notice of a different address, Distributions will be sent to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court. If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules.

7.4.5 **Withholding Taxes**. Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate. The Disbursing Agent shall be permitted to withhold a Distribution to any Creditor that has not provided information

requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent shall comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

**7.5** **De Minimis Distributions.** Notwithstanding any other provision of the Plan, Distributions of less than $10.00 need not be made on account of any Allowed Claim or Allowed Interest; provided that Distributions that would otherwise be made but for this provision shall carry over until the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim or Allowed Interest is entitled to more than $10.00, at which time the cumulative amount of such Distributions will be paid to such holder.

**7.6** **Unclaimed Distributions.** Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the property of the Reorganized Debtor and be considered Available Cash.

**7.7** **Prosecution of Retained Claims.** The Reorganized Debtor shall retain the right to collect and prosecute all of the Retained Claims.

**7.8** **Revesting of Property of the Estate.** On the Effective Date, all property of the Debtor and the Bankruptcy Estate shall vest in the Reorganized Debtor, free and clear of any and all liens (except for Allowed Secured Claims), encumbrances, Claims and Interests of Creditors and Equity Security Holders. Revesting does not modify the nature of any contracts assumed by the Debtor.

**7.9** **Tax Returns and Payments.** The Reorganized Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Reorganized Debtor on a timely basis (other than Tax Claims provided for under the Plan)

**7.10** **Organizational Matters.** The Articles of Organization of the Debtor shall be deemed amended, as of the Effective Date, to prohibit the issuance of nonvoting equity securities and the issuance of any new class of voting equity securities until such time as all classified and unclassified creditors are paid in full.

18

**7.11** **Further Orders.** Upon motion by the Debtor, on not less than ten (10) days' notice to the Notice Parties, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

**7.12** **Insurance Policies.** To the extent any insurance policies exist in which either the Debtor and/or its personnel have an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtor and/or the Debtor's current or former management or other personnel that may be covered by such policies.

**7.13** **Post-Confirmation Operating Expenses.** From and the Effective Date, the Reorganized Debtor may incur and pay operating expenses in the ordinary course of business, including the compensation and reimbursement of the Debtor's Professionals for post-confirmation services. Compensation and reimbursement of the Debtor's Professionals for pre-confirmation services shall remain subject to authorization by the Bankruptcy Court, after notice and hearing, pursuant to Bankruptcy Code Section 330.

**7.14** **Post-confirmation Notice.**

**7.14.1** **Notice Generally.** To the extent any action taken in the Bankruptcy Case after the Effective Date requires notice under the Bankruptcy Code or the Bankruptcy Rules, the Order Limiting Notice entered in the Bankruptcy Case shall continue in effect and notice shall be required to the Notice Parties, provided that notice shall not be required to any Person whose Claims have been paid in full

**7.14.2** **Notice Procedure.** Whenever the Plan requires the Reorganized Debtor to comply with the Notice Procedure (in such circumstance, the "Notifying Party"), the Notifying Party shall transmit a written notice to the Notice Parties (each, a "Notice Recipient") of the proposed action. The Notifying Party shall be authorized to take any action proposed to be taken in such notice fifteen days after delivery of such notice unless before the expiration of such 15-day period a Notice Recipient has filed an objection to such proposed action with the Bankruptcy Court and scheduled a hearing on such objection with thirty days after filing of such objection and upon not less than 20 days notice to all Notice Parties. If any such objection is filed, the Notifying Party will

Case: 21-10077   Doc# 47   Filed: 06/21/21   Entered: 06/21/21 10:21:38   Page 20 of 30

not take the proposed action unless the Court approves such action or the objecting party withdraws the objection.

**7.15    Post-Confirmation Reports, Fees, and Final Decree.**

       7.15.1    **U.S. Trustee Fees.**  Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtor shall pay to the United States Trustee the quarterly fee for such quarter until this case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

       7.15.2    **Post-Confirmation Reports.**  Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Reorganized Debtor shall file and serve upon the United States Trustee separate quarterly Post-Confirmation Operating Reports in substantially the form provided by the United States Trustee.  Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

       7.15.3    **Final Decree.**  After the Plan is substantially consummated, the Reorganized Debtor will file an application for a Final Decree, and will serve the application as provided in the Local Rules.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    Assumption of Executory Contracts and Unexpired Leases.**  Any executory contracts of the Debtor, which have not specifically been rejected, shall be deemed assumed as of the Effective Date.

**8.2    Effect of Assumption of Executory Contracts and Unexpired Leases.**  Any executory contracts assumed prior to Confirmation shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

**8.3    Adding and Removing Executory Contracts and Unexpired Leases.**  The provisions of this Article VII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to

add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

**8.4    Defaults.**  Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtor shall, on or before the Effective Date, (a) cure, or provide adequate assurance that it will promptly cure, any such default, (b) compensate, or provide adequate assurance that it will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default, and (c) provide adequate assurance of future performance under such contract or lease.

**8.5    Rejection Claims.**  Rejection Claims shall be classified as Class 7 Claims.  The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Reorganized Debtor, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

## ARTICLE IX
## PROOFS OF CLAIM AND INTEREST; OBJECTIONS

**9.1    Time for Filing Proofs of Claim.**  Proofs of Claim, when required, shall be filed with the Bankruptcy Court no later than the applicable Claims Bar Date, or such Claims shall be conclusively deemed barred and disallowed.

**9.2     Evidence of Claim.**  For purposes of any Distribution under the Plan, the Disbursing Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the first Distribution Date.  The Reorganized Debtor, the Disbursing Agent, and their professionals shall be entitled to recognize and deal for all purposes with only those Creditors and Equity Security Holders of record with the Bankruptcy Court as of the first Distribution Date.

**9.3    Amendments to Claims.**  Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, proofs of Claim and proofs of interest may not be filed or amended except for amendments to proofs of Claim to decrease the amount or priority thereof.

**9.4** **Claim Objections.** An objection to a Claim shall be filed no later than the Claims Objection Date. The Reorganized Debtor shall have the responsibility to review Claims filed against the Debtor, to file objections as appropriate, and to resolve Disputed Claims.

**9.5** **Distributions.** Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly in accordance with the Section 7.5.

**ARTICLE X**

**DEFAULT**

If the Reorganized Debtor shall default in the performance of any of their respective obligations under the Plan, and shall not have cured such default within a period of ten (10) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may file a motion with the Bankruptcy Court seeking an order directing the Reorganized Debtor to perform such obligations. If the Reorganized Debtor default in the performance of any material obligation under the Plan, any party in interest, including the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. If such motion is granted, the Plan shall terminate, and all property of the Reorganized Debtor shall revest in the Chapter 7 estate. Such property shall be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code. Any party in interest, including the Reorganized Debtor, may oppose any such motion.

**ARTICLE XI**

**PRESERVATION OF RETAINED CLAIMS**

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and shall not be

construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Retained Claims are hereby preserved and shall continue to remain valid after the Effective Date. The Debtor furthers reserve the right to object to any filed or scheduled Claim. The entry of the Order of Confirmation shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Reorganized Debtor upon any Retained Claims.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case (a) to enforce the provisions, purposes, and intent of the Plan, including matters or proceedings that relate to the Purchase Transaction; (b) to determine the allowance or disallowance of Claims and Interests, (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, Claims, causes of action or claims for relief held by the Reorganized Debtor against any party, including the recovery of property and subordination of Claims and Interests, (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan, (e) to adjudicate controversies arising from the terms of the Plan, (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case, (h) to facilitate the consummation of the Plan, (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation, and (j) to hear and determine any Claim of any Persons of any nature whatsoever against the Debtor's professionals arising in or related to the Case, and (k) to enter a Final Decree closing the Bankruptcy Case. If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of this Article.

## ARTICLE XIII
## EFFECT OF ORDER OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation shall be as provided in

Section 1141 of the Bankruptcy Code, and as follows:

**13.1    Binding Effect of Plan.**  The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Equity Security Holder, whether or not such Creditor or Equity Security Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Equity Security Holder is impaired under the Plan, and whether or not such Creditor or Equity Security Holder has accepted or rejected the Plan.

**13.2    Grant of Discharge.**   Except as otherwise provided in this Plan, in the Confirmation Order, or in 11 U.S.C. § 1141(d)(3), Confirmation shall be a discharge, effective as of the Effective Date and pursuant to 11 U.S.C. § 1141(d)(1), of any and all debts of the Debtor that arose at any time before Confirmation.  The discharge shall be effective as to each Claim regardless of whether a proof of claim therefor was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept this Plan.  The Confirmation Order shall be deemed to be a Final Order disallowing any claim not filed as of the Effective Date.

**13.3    Effect of Discharge.**   The discharge release provided for under this Plan shall have the effects set forth in the Bankruptcy Code including, but not limited to:

(a)    voiding any judgment obtained against the Debtor on any discharged debt; and;

(b)    operating as an injunction against the commencement or continuation of any action to collect, recover, or offset either any discharged debt from the Debtor, the Reorganized Debtor, or its Estate or any property of the Debtor, the Reorganized Debtor, or its Estate,  except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

**13.4    Full Satisfaction of Claims.**  Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan shall constitute full and complete satisfaction and release of all Claims, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Reorganized Debtor, the Estate, or any assets or property of the Debtor, the Reorganized Debtor and the Estate.  Except with respect to Administrative Claims, Rejection Claims, and Claims described in Bankruptcy Rule 3002(c)(3), the Confirmation Order shall be

Case: 21-10077    Doc# 47    Filed: 06/21/21    Entered: 06/21/21 10:21:38    Page 25 of 30

deemed to be a Final Order disallowing any claim not filed as of the Effective Date.

**13.5    Reservation of Powers.**   Nothing in the Plan shall be deemed to have constituted a waiver of the any powers held by the Debtor as Debtor-in-possession under the Bankruptcy Code, the Bankruptcy Rules or the Local Rules.  The Reorganized Debtor shall retain all powers granted by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to a trustee or debtor-in-possession, including those with respect to recovery of property and objections to, and/or subordination of, Claims and Interests.

**ARTICLE XIV**

**MISCELLANEOUS**

**14.1    Plan Interpretation.**   The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan.  All references in the Plan to the singular shall be construed to include references to the plural and vice versa.   All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders.  All exhibits attached to the Plan are, by this reference, hereby incorporated into the Plan.  All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan.  Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

**14.2    Modification.**   The Debtor may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.  After the Confirmation Date, the Debtor may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

**14.3    Waiver.**   After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

**14.4    Reservation of Rights.**   Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b)

until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor, except with respect to Confirmation of the Plan.

## ALTERNATIVES TO THE DEBTOR'S PLAN

### A. Chapter 7 Liquidation

In a chapter 7 liquidation proceeding, the Debtor's interest in any assets of the Estate, including litigation rights, would vest in a chapter 7 trustee, who would succeed to all either (1) release all the assets to the respective secured creditors or (2) attempt to administer the assets and distribute any proceeds remaining after pay off of the Secured Creditors to the other creditors of the estate under the priorities established by Bankruptcy Code Section 507.

The Debtor believes that the Plan is more beneficial to Creditors and other parties in interest than chapter 7. In a chapter 7 the Windsor Mill Property would almost certainly be lost in foreclosure to one of the two senior secured creditors for two reasons. First, a chapter 7 trustee has no ability to complete the land use entitlement process for the Windsor Real Property necessary to enhance its value. Second, a chapter 7 trustee has no power to raise the required capital to fund debt service and tax payments while the Property is entitled and marketed for sale. In a chapter 7 it is virtually certain that unsecured creditors would receive nothing.

### B. No Other Plans

The Bankruptcy Code permits different parties to propose competing plan of reorganization under certain circumstances. The Debtor's Plan is the only Plan which has been proposed at this time.

## FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Each Creditor should consult its own tax advisors concerning any income tax consequences of its respective treatment under the Plan.

## VOTING, ACCEPTANCE AND CONFIRMATION

### A.     In General.

The Hon. Roger L. Efemsky, Judge, United States Bankruptcy Court, has set a date for the hearing on the Confirmation of the Plan. The hearing is to held at the United States Bankruptcy Court, 99 South E. St., Santa Rosa, CA [or via Zoom Webinar]. The Plan can be implemented only if accepted by the requisite percentage of creditors and confirmed by the Bankruptcy Judge. Creditors entitled to vote should vote on the Plan by filling out and mailing the accompanying ballot to counsel. There is no assurance that, if accepted, the Plan will be confirmed by the Bankruptcy Judge.

### B.     Voting.

Only impaired classes under the Plan will be entitled to vote on the Plan. The definition of an "impaired" class of Creditors is set forth in Section 1124 of the Bankruptcy Code. Classes 1, 2, 3, 4, and 5 are impaired by the Plan and entitled to vote. Class 6 is conclusively presumed to have rejected the the Plan. . The Bankruptcy Code defines "acceptance" of a plan by a class of Creditors as acceptance by the holders of two-thirds (2/3) in dollar amount and more than one-half (½) in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan.

In addition to the requirement that a Creditor be in an "impaired class", in order for a creditor's vote to be counted, either for or against the Plan, the creditor must have either (1) filed a proof of claim on or before the "Claims Bar Date", which was previously set by the Court at June 17, 2021 (2) have been listed by the Debtor in the Schedule of Liabilities as having a claim which was noncontingent and undisputed.

**IF YOU HAVE ALREADY FILED A CLAIM YOU NEED NOT REFILE FOR THE PURPOSE OF VOTING ON THE PLAN.**

If a Creditor wishes to vote for or against the Plan, the Creditor should complete an acceptance or rejection of the Plan on the form ballot enclosed herewith which must be returned pursuant to the instructions set forth thereon.

Case: 21-10077   Doc# 47   Filed: 06/21/21   Entered: 06/21/21 10:21:38   Page 28 of 30

## C.    Confirmation

If no impaired Creditor classes accept the Plan, it cannot be confirmed.  If at least one impaired class of Creditors accepts the Plan, the Court will hold a Confirmation Hearing.  At the Confirmation hearing, the Bankruptcy Judge has the duty to determine whether the Plan meets the requirements of Section 1129 of the Bankruptcy Code.  The principal requirements of Section 1129 include the following: (1) that the proponents of the Plan have complied with the applicable provisions of the Bankruptcy Code on all matters connected with the case; (2) that the Plan has been proposed in good faith, and not by any means forbidden by law; (3) that the requisite amount of creditors have accepted the Plan or that the creditors are receiving an amount not less than they would receive if liquidation under chapter 7 took place; (4) that at least one class of Creditors has accepted the Plan; and (5) that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization of the debtor; and (6) that the Debtor and the Plan in all other respects comply with applicable law.  Only if such determinations are made will the Judge confirm the Plan.

If there are impaired Creditor classes which have rejected the Plan, the Bankruptcy Judge may order Confirmation over its rejection, but only if the Judge first determines that the rights of non-consenting classes of creditors are protected under Bankruptcy Code Section 1129(b) and other applicable law.  The Debtor reserves the right to seek confirmation under Bankruptcy Code Section 1129(b) of this Plan.

/ / /

**CONCLUSION**

2     The Debtor believes that this Plan of Reorganization realistically affords to Creditors their

3 best opportunity for receiving a prompt, meaningful dividend.   The Debtor respectfully request

4 Creditors vote to accept the Plan.

5

6     DATED June 11, 2021.

7

8 MacCONAGHY & BARNIER, PLC          WINDSOR MILL COMMUNITY, LLC
                                                     a California limited liability company
9

10 By: /s/ John H. MacConaghy                 By: /s/ Robert H. Bisno
    John H. MacConaghy                               Robert H. Bisno
11 Attorneys for Debtor                           Its Responsible Person

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28